Argued June 28, reversed and remanded September 24,
petition for reconsideration denied November 29, 1979,
petition for review denied February 20, 1980 (288 Or 571)

KRIZ,
*Appellant,*
*v.*
GOVERNMENT EMPLOYEES INSURANCE
COMPANY,
*Respondent.*
(No. A7611-16529, CA 12871)

600 P2d 496

Raymond J. Conboy, Portland, argued the cause for appellant. With him on the briefs were Pozzi, Wilson, Atchison, Kahn & O'Leary, and Green & Griswold, Portland.

James Callahan, Portland, argued the cause for respondent. With him on the brief were David C. Landis, and Gearin, Landis & Aebi, Portland.

Before Schwab, Chief Judge, and Thornton, Buttler and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

This is an action against an insurer for refusal to settle within the limits of its policy a personal injury action brought against its insured. Judgment was entered against the insured in the personal injury action for a sum greatly in excess of the policy limits. Plaintiff here is the person who brought the personal injury action against the insured and is the assignee of the insured's cause of action against the insurer. The insurer was granted summary judgment. Plaintiff appeals.

■ We must determine whether the trial court was correct in concluding that there were no genuine issues of material fact remaining to be litigated and that the insurer was entitled to judgment as a matter of law. ORS 18.105(3). For that determination we view the evidence in the light most favorable to plaintiff. *Forest Grove Brick v. Strickland*, 277 Or 81, 559 P2d 502 (1977).

Plaintiff sustained severe injuries when a car in which she was riding was struck by a vehicle driven by Nicholas Barry (Barry). One of her legs was amputated, and she incurred hospital and medical bills of nearly $18,000. The circumstances indicated Barry's responsibility. Government Employees Insurance Company (GEICO) insured Barry. The policy provided $10,000/$20,000 liability coverage—the lower limit for each injured person, the higher for each occurrence—on Barry's pickup truck and $25,000/$50,000 on his car. The policy provided for payment on behalf of the insured of all sums up to the stated limits which he should become legally obligated to pay as damages because of bodily injury sustained by any person arising out of the ownership, maintenance or use of the "owned automobile" or a "non-owned automobile." The policy defined "owned automobile" to include a "temporary substitute automobile," *i.e.*,

"*** any automobile *** not owned by the named insured, while temporarily used with the permission

of the owner as a substitute for the owned automobile *** when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

"Non-owned automobile" was defined as an automobile

"*** not owned or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

"Relative" was defined as "a relative of the named insured who is a resident of the same household."

The accident occurred during a period in which Barry was temporarily staying with his sister and brother-in-law on their ranch in southeastern Oregon. His pickup truck, which he had driven there, had become inoperable. At the time of the accident he was driving a pickup belonging to his sister and brother-in-law to pick up a load of plywood to be used on the ranch. That truck was insured by American States Insurance Company (American States).

On November 21, 1972, roughly two and one-half months after the accident, a lawyer representing GEICO wrote a letter to GEICO stating:

"Based upon the information developed through the investigation to this point, it appears that your insured, Mr. Barry, was operating a vehicle which his sister, with whom he resided in the same household, jointly owned, and under circumstances in which it was not a temporary substitute automobile as defined in the policy. Therefore, as we interpret the policy, the vehicle which he was driving was not a 'non-owned vehicle' to which coverage under the policy would extend."

The extent of the investigation conducted prior to that letter and the information alluded to in it are not disclosed in the record. Sometime prior to December 14, 1973, plaintiff filed a personal injury action against Barry. GEICO undertook defense of that action, subject to a reservation of rights.

In January, 1974, while the personal injury action was pending, GEICO filed a declaratory judgment action against Barry, Kriz, the plaintiff here, and others seeking a declaration that its policy did not cover Barry's liability and that it was not required to defend him in the personal injury action.[1] Although the initial complaint in that case did not specifically request a determination whether the $10,000/$20,000 or $25,000/$50,000 limits were applicable, all other indications are that that was made an issue prior to the letter discussed in the following paragraph.

Attorney Atchison represented plaintiff here in both the personal injury action and the declaratory judgment action brought by GEICO. On May 10, 1974, while both actions were still pending, he wrote a letter to attorney O'Hanlon, who represented GEICO in the declaratory judgment action, and to the attorneys defending Barry on behalf of American States and GEICO. That letter stated in material part:

"As you know, Mrs. Kriz's case against Mr. Barry will be tried *** on June 20, 1974. *** As you know, Mrs. Kriz suffered serious and permanent injuries including a lower leg amputation, and I enclose copies of the following medical reports ***."

[There followed an itemization of medical expenses totalling $17,927.76.]

"The American States Insurance Company has a $10,000/20,000 policy and has previously indicated their [sic] willingness to pay their [sic] $10,000.

"Government Employees Insurance Company takes the position that their [sic] policy covering Mr. Barry does not apply, and they have filed a declaratory action. Discovery has been taken in that case and contrary to the allegations in the complaint it appears that there is in fact coverage protecting Mr. Barry in this accident.

"In an effort to get the matter settled for Mrs. Kriz at the least possible expense to her and with her

---

[1] That the declaratory judgment action was not properly maintainable was not raised. *See Mitchell Bros. Truck Lines v. Lexington Insurance Company*, 287 Or 217, 598 P2d 294 (1979).

concurrence and the concurrence of her family, we herewith offer to settle Mrs. Kriz's personal injury case for the sum of the single limit of the two policies. We will leave this offer open for a period of ten days, at which time the offer will be withdrawn. We will then proceed to trial against Mr. Barry and will not be in a position to discuss settlement of Mrs. Kriz's very serious injury for the applicable limit of the insurance."

On May 16, 1974, O'Hanlon responded to Atchison's letter:

"This is to acknowledge receipt of your letter of May 10, 1974 in which you demand that Government Employees Insurance Company pay to your client, Helen Kriz, the policy limit for a single occurrence of injury.

"As you know and recite in your letter, Government Employees Insurance Company earnestly believes that Mr. Nicholas Barry does not have insurance coverage for the accident involving your client. In order to resolve that controversy, Government Employees Insurance Company filed a declaratory judgment to resolve that question. Discovery in that declaratory action clearly indicates that Mr. Nicholas Barry does not have coverage for the accident involving your client. The automobile driven by Mr. Nicholas Barry was not an 'owned' automobile within the policy definition of that term because the pick-up involved in the accident was owned by Ruth and William Cox, Mr. Barry's sister and brother-in-law. Similarly, the vehicle was not a 'non-owned' automobile because it was owned by a relative residing in the same household as Mr. Barry. However, it is clear that Mr. Barry has coverage under the American States Insurance Company policy and that your client may benefit therefrom because, as you state, they have tendered their policy limit to you.

"Furthermore, the complaint for declaratory judgment asks the court to resolve the coverage issue with regard to the single limit coverage applicable to this action. Assuming for purposes of argument that Mr. Nicholas Barry has coverage under this policy with Government Employees Insurance Company, there is

[344]

an independent issue of coverage with respect to whether Mr. Barry would be entitled to the benefits of the $25,000/50,000 limits applicable to the Mercedes automobile or the $10,000/20,000 limits applicable to the pick-up truck. As you know Mr. Barry took the pick-up with him and regarded it as his own when he was permanently separated from his wife in July of 1972. It was upon that same pick-up that he placed sole reliance for his transportation at the time of the accident because he and the pick-up were in Lakeview, Oregon and the Mercedes automobile and Mrs. Lois Barry were in Roseburg, Oregon. To the best of our knowledge, that arrangement was never altered. Accordingly, Government Employees Insurance Company believes that even if a court should rule that Mr. Nicholas Barry has coverage under his policy with them, he would only be entitled to the benefits of the $10,000/20,000 limit applicable to the pick-up truck.

"With these two legitimate questions of insurance coverage unanswered with regard to Mr. Nicholas Barry's policy with Government Employees Insurance Company, Government Employees Insurance Company cannot intelligently respond to your demand letter of May 10, 1974. Therefore, Government Employees Insurance Company requests that you extend the time for response to your letter until the court has ruled upon these issues and postpone Mrs. Helen Kriz's lawsuit until these issues have been determined.

"If the Court rules in your client's favor, Government Employees Insurance Company will immediately offer to Mrs. Kriz the single policy limit found applicable by the court."

Atchison never responded to O'Hanlon's letter. He later testified on deposition that had GEICO offered $10,000, he would have accepted. He also testified in regard to his letter:

"Well, even though Mr. Barry had the pickup which the policy provided had a 10-20 coverage on it, we could, perhaps argue and negotiate with the carrier that perhaps there's a chance that the higher of the two limits would apply and obtain a little

better settlement for the client by negotiating between the 10 and the 25."

About October 11, 1974, O'Hanlon inquired of Atchison "whether [he] would care to extend an offer to settle upon a 10-20 basis." There is no evidence of an express response.

The declaratory judgment action was tried on October 22-23, 1974. The jury found that at the time of the accident, Barry's own pickup was disabled and that the truck he was driving was a "temporary substitute automobile." Therefore, the court declared that GEICO's policy applied, but it also determined that the applicable limit of the insurer's liability was the $25,000/$50,000 limit provided for Barry's car. Shortly after that decision was rendered, the attorney representing GEICO in the personal injury action offered to settle for $25,000. Atchison rejected that offer. On October 16, 1975, the Oregon Supreme Court modified the judgment in the declaratory proceeding after determining that the $10,000/$20,000 limit provided for Barry's truck applied to the accident in question. *Govt. Employees Ins. Co. v. Barry*, 273 Or 326, 541 P2d 138 (1975).

Plaintiff's personal injury action against Barry was tried in December, 1974. She was awarded a $97,898.26 judgment. Barry subsequently assigned to her his cause of action against GEICO for refusal to settle within the policy limits. The propriety of that assignment is not in issue.

Plaintiff's complaint in this action alleged in material part:

"[T]he attorneys for Helen Kriz offered to settle her case against Nicholas Loftus Barry for the limits of the policy in full settlement of all claims for damages, arising out of said accident for the injuries to plaintiff. Said offer was communicated to the defendant, but the defendant rejected said offer of settlement.

"In failing to accept said offer of settlement, defendant was negligent and acted in bad faith and in

[346]

disregard of the interest of its insured, Nicholas Loftus Barry; and that it knew, or should have known, there was substantial evidence of the insured's responsibility for the accident and serious injuries to Helen Kriz; and that by refusing to accept said offer of settlement, defendant exposed Nicholas Loftus Barry, its insured, to a large judgment for damages in excess of the limits of liability of his insurance policy."

Plaintiff and GEICO each filed motions for summary judgment. GEICO's motion was based in part[2] on the argument that:

"The demand letter of plaintiff's attorney, Mr. Atchison, was not a 'clear and unambiguous' offer to settle the personal injury action for the policy limits. It was rather a carefully ambiguous demand, coupled with a sudden death timetable intended to set up the insurance company for a 'bad faith' claim."

The trial court allowed GEICO's motion without opinion.

██ It is well established that an insurer may be liable to its insured for the excess of a judgment over the limits of a liability policy if the insurer has failed, negligently or in bad faith, to settle the claim against the insured. *Eastham v. Oregon Auto. Ins. Co.*, 273 Or 600, 540 P2d 364 (1975); *Groce v. Fidelity General Insurance*, 252 Or 296, 448 P2d 554 (1968); *Radcliffe v. Franklin Nat'l Ins. Co.*, 208 Or 1, 298 P2d 1002 (1956). When an opportunity to settle within the policy limit is presented, the insurer, which is in a position of trust in managing the litigation, must consider the interests

---

[2] GEICO urged as an "alternative ground in support of its motion for summary judgment":

"*** GEICO submits that the 'offer' was not capable of acceptance since it failed to make any provision for the compromise or settlement of an outstanding subrogation claim of Safeco Insurance Company against the insured for PIP payments to the Kriz family."

There is virtually no evidence in the record with respect to any PIP payments or any interest of Safeco. It is clear that O'Hanlon's letter did not mention that problem. Because of the inadequacy of the record on that point and the fact that GEICO has abandoned that ground, we do not reach that issue.

[347]

of the insured equally with its own. *Eastham v. Oregon Auto. Ins. Co.,supra.* In other words, the insurer should exercise its judgment as if it would be solely responsible for the entire judgment.

■ On appeal, GEICO has abandoned its contention that 10 days was *per se* an unreasonably short time to leave the offer open. GEICO argues only that Atchison's letter did not convey a clear, unequivocal and unambiguous offer to settle within the policy limits and therefore could not be the basis for any liability. Plaintiff disagrees and argues that GEICO was not entitled to summary judgment on that or any other basis.[3]

We recognize that there are at least two possible ambiguities and one equivocation in Atchison's letter. They are all in one clause:

> "*** [w]e herewith offer to settle Mrs. Kriz's personal injury case for the sum of the single limit of the two policies."

The first possible ambiguity is whether plaintiff's offer to settle with GEICO was for the "applicable limit"of GEICO's policy (with American States paying its policy limit) or whether the offer contemplated GEICO paying the total of its policy limit and American States'. The letter did clearly state, however, that American States had agreed to pay the applicable limit of its $10,000/$20,000 policy, *i.e.*, $10,000. Given the circumstances and that contextual background, a jury might reasonably conclude that GEICO should have interpreted the offer as one for its policy limit. The second possible ambiguity is whether plaintiff was offering to settle for the single person or single occurrence limit of the policy. Under the circumstances and in light of the letter's statement that American States was willing to pay $10,000 on its $10,000/$20,000 policy, a jury could find that the offer

---

[3] Plaintiff also argues two procedural reasons why the granting of summary judgment was erroneous. In the light of our disposition, we do not reach those issues.

should reasonably have been taken as one for the single injury limit. Neither of these possible ambiguities is the basis for the problem, however.

It is the letter's equivocation with respect to the dollar amount of the "applicable limit" on which GEICO focuses. The evidence leaves no doubt that Atchison knew there was uncertainty as to whether the single injury limit was the $10,000 provided for Barry's truck or the $25,000 provided for his car. It is also clear that Atchison consciously avoided any commitment to a precise sum. Nevertheless, the letter did convey an offer to settle for the "applicable" policy limit.

GEICO could have responded to the letter other than it did. GEICO maintained all along that $10,000 was the applicable limit, if the claim was covered at all. It could have simply responded that it would pay $10,000.[4] Atchison testified that he would have accepted that. That would have settled the case, if Atchison's testimony that he would have accepted such an offer is credible, as we must treat it on reviewing a summary judgment.

Instead, GEICO declined to make any settlement offer until the declaratory judgment proceeding determined whether it had to cover the claim. A jury could find that GEICO was presented a reasonable opportunity to settle for the $10,000 policy limit, that in responding to the opportunity GEICO placed its own interests above those of its insureds and that had GEICO acted in "good faith" the claim would have been settled for the policy limit. On the other hand, a jury might find that GEICO was not presented a reasonable opportunity to settle (given, say, the issues of the existence and amount of coverage and Atchison's knowledge of those factors) or that the responsibility for the failure to settle lay at plaintiff's—or her

---

[4] A jury could find that that amount, or $25,000 for that matter, was clearly within the amount of damages plaintiff could be expected to be awarded and that Barry's tort liability was clear.

attorney's—door. It was not the trial court's function, and it is not our function, to decide issues which are basically factual, like negligence or bad faith, or issues of credibility. Those are issues for trial.

We conclude that GEICO's motion for summary judgment should not have been granted. The judgment is therefore reversed and the matter remanded for trial.

Reversed and remanded.