Argued and submitted June 26, affirmed August 14, reconsideration denied
October 9, petition for review denied November 26, 1991 (312 Or 525)

Margie A. GODDARD,
as Personal Representative of the Estate of
Marc E. Goddard, Deceased.
*Respondent,*

*v.*

John MUNSON,
*Appellant,*
*and*

Helen FOLEY,
*Defendant.*

(88C-10733; CA A64772)

816 P2d 619

Keith J. Bauer, Salem, argued the cause for appellant. With him on the briefs were Billy M. Sime and Parks, Bauer & Sime, Salem.

Carl R. Amala, Salem, argued the cause for respondent. With him on the brief were J. P. Harris, II, and Law Office of J. P. Harris, II, P.C., Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

RICHARDSON, P. J.

---

* Joseph, C. J., *vice* Newman, J.

## RICHARDSON, P. J.

Plaintiff, the mother of Marc Goddard and personal representative of his estate, brought this wrongful death action against defendant Munson. The decedent, who had recently completed his senior year in high school, died as the result of a collision between his vehicle and one that defendant was driving while intoxicated shortly after drinking at three or four taverns.[1] The case was tried to a jury, which awarded damages for plaintiff's loss of services, society and companionship and for pecuniary loss to the decedent's estate. The jury also assessed punitive damages. Defendant appeals from the resulting judgment, and we affirm.

■■ Defendant's first assignment asserts that the court erred by denying his motions for a directed verdict and for judgment notwithstanding the verdict on plaintiff's claim for loss of services, society and companionship. He contends that plaintiff did not prove damages, because she offered no evidence of her age or life expectancy. The parties offer out-of-state authority for their differing positions on whether any evidence was necessary and, if so, whether the evidence presented was sufficient. No Oregon case that the parties or we find is squarely on point.[2]

ORS 30.020(2) provides, in part:

"In an action under this section damages may be awarded in an amount which:

"* * * * *

"(c)  Justly, fairly and reasonably compensates for pecuniary loss to the decedent's estate;

"(d)  Justly, fairly and reasonably compensates the decedent's spouse, children and parents for pecuniary loss and for loss of the society, companionship and services of the decedent * * *."

---

[1] Plaintiff also stated a claim for negligent entrustment against the owner of the vehicle, Helen Foley. The jury decided that claim in Foley's favor, and she is not a party to the appeal.

[2] *Morrison v. McAtee,* 23 Or 530, 32 P 400 (1893), on which plaintiff relies, supports her argument that mortality tables are neither essential nor conclusive evidence of life expectancy. However, that breach of contract action is so distinguishable from this case that it offers little assistance in resolving the broader contention that defendant makes.

The language of ORS 30.020(2)(d) lends no apparent support to the necessary premise of defendant's argument, which is that loss of services, society and companionship is compensable only if it can be temporally calibrated. Even assuming that premise, however, there was evidence from which the jury could make the necessary inferences: The years that plaintiff, her daughter and the decedent attended school were in evidence; there was conflicting evidence about plaintiff's health; and the jury saw plaintiff throughout the trial. Nothing more specific was necessary for plaintiff to carry any burden that she may have had. Defendant was of course free to offer any more specific relevant evidence that he might have had, but he is mistaken in asserting that the evidence that he describes was essential to plaintiff's proof rather than a matter for rebuttal. We reject the first assignment.[3]

■       Defendant's second assignment is somewhat similar. He contends that the court erred by denying a directed verdict and a judgment *n.o.v.* on the claim for pecuniary loss to the decedent's estate. The theme of the argument is that, although the decedent was survived by two grandparents, his mother and a sister, there was no evidence that they would have outlived him and, therefore, no evidence that any heirs could have received the assets that the decedent would have accrued over a normal life span.

The proof was not necessary. The wrongful death statute may require, as a prerequisite to an action, that there be beneficiaries entitled to take under the laws of intestate succession when the action is brought. *See* ORS 30.020(1). However, under ORS 30.020(2)(c), no proof of the facts that defendant delineates is necessary if there are living beneficiaries at the time of the action. Defendant makes the point that the "decedent was not married and * * * did not have any children." By the logic of defendant's argument, however, plaintiff would have been entitled to prove—or defendant required to disprove—the likelihood that the decedent would have married and would have had children had he not died at a young age. The decedent's estate is the recipient of damages

---

[3] Some of defendant's arguments under this assignment and the next imply that there was error in the jury instructions. However, the assignments designate only the denial of defendant's motions for a directed verdict and for judgment *n.o.v.* as the errors.

awarded under ORS 30.020(2)(c), and no evidence is required about the imponderable fact of who the decedent's heirs might eventually have been if he had not died when he did.

■        In his third and fourth assignments, defendant contends that the court erred by excluding certain evidence that he maintains was probative of the decedent's criminal record, including pending charges, and that was therefore arguably relevant to his prospective earning power as well as to his capacity to provide services, society and companionship.[4] The court admitted abundant evidence of the decedent's criminal activity, and it acted within its discretion in excluding the particular evidence in question.

■        Defendant's next assignment is that the court erred by excluding an affidavit of indigency executed by the decedent in connection with one of the criminal charges against him. Defendant contends that the affidavit was false. Therefore, he says:

> "The failure to admit the affidavit prevented Munson's attorney from arguing to the jury that the affidavit indicated that [decedent] was willing to lie under oath. Such evidence and argument would cast further doubt on [decedent's] credibility, which in turn casts doubt on the believability of his statements to Shirley Beaty and Officer Anglemeier and others that his experience in jail had turned his life around. It was reversible error to exclude the affidavit."

Even if the evidence *could* have been admissible for that marginal purpose, the court certainly was within the bounds of its discretion in not admitting it.

---

[4] Defendant argues that the evidence was also relevant for another purpose:

"The court's ruling prevented the introduction of evidence that [decedent] was stopped in a motor vehicle and was cited for being a minor in possession of alcohol on September 20, 1987. This, in turn, prevented Munson's attorney from making arguments to rebut the statements made by several witnesses at trial and during closing arguments by plaintiff's attorney that [decedent] did not use alcohol or have a drinking problem. This ruling was particularly unfair in light of plaintiff's claims that Munson should be punished with an award of punitive damages for drinking and driving."

The evidence could not have been relevant for that purpose. There was no counterclaim in which punitive damages were sought against the decedent's estate, and it is not the law that unrelated episodes of misconduct by a plaintiff are relevant to whether the defendant's misconduct warrants punitive damages.

■ Defendant's remaining assignment takes issue with the admission of an exhibit showing the large number of checks that he had written at taverns before and after the accident, beginning in 1983. We need address only whether the evidence was admissible to support plaintiff's claim for punitive damages.[5] Defendant argues that there was no evidence of a check written on the day of the accident, that the fact that he went to taverns did not mean that he always drank intoxicants there or drove afterwards and that

> "[t]he check summary is not relevant on the issue of punitive damages because the summary does not in any way establish anything about the circumstances on the dates that Munson wrote the checks, or what he did on those dates. The check summary is not in any way relevant on whether John Munson's conduct on October 29, 1987 was wanton or willful or in reckless disregard of the rights of others.
>
> "Any possible probative value concerning the check summary was slight and was greatly outweighed by its extreme prejudicial effect. The only reason plaintiff offered the check record summary is to establish indirectly, by inference and innuendo, that over the course of less than four years, John Munson went to various taverns about 680 times, got drunk, and operated a motor vehicle. Such an inference is unfair and misleading, and is of such a nature as to cause the jury to decide the issue of punitive damages on an improper basis."

We disagree. Defendant had been drinking at several taverns shortly before he drove under the influence and killed the decedent. It was a permissible inference from the challenged evidence, and relevant to punitive damages, that defendant's course of conduct at the time of and before the accident was not an isolated episode. The evidence was also relevant to impeach defendant's protestations that he had stopped drinking after the accident and, therefore, to rebut the implication that reformation had occurred and punitive damages were unnecessary to deter defendant. The exhibit was properly received.

Affirmed.

---

[5] Plaintiff also argues that the evidence was relevant to the negligent entrustment claim against Foley.