Argued and submitted November 3, 1997, decision of Court of Appeals and
judgment of circuit court affirmed July 24, 1998

Jane DOE,
*Petitioner on Review,*

*v.*

DENNY'S, INC.,
a California corporation;
and Robert Hibbard and Ken Jacobs,
*Respondents on Review.*

(CC CV 940538; CA A89182; SC S44144)

963 P2d 650

Michael B. Collins, Pendleton, argued the cause and filed the briefs for petitioner on review.

Emil R. Berg, Boise, Idaho, in association with Carl Burnham, Jr., of Yturri, Rose, Burnham, Bentz & Helfrich,

LLP, Ontario, argued the cause and filed the briefs for respondents.

Charles Robinowitz, Portland, filed briefs on behalf of *amicus curiae* Oregon Trial Lawyers Association.

Karen O'Kasey, of Schwabe, Williamson & Wyatt, Portland, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel.

Before Carson, Chief Justice, Gillette, Van Hoomissen, Durham, and Kulongoski, Justices.**

GILLETTE, J.

---

** Fadeley, J., retired January 31, 1998, and did not participate in this decision. Graber, J., resigned March 31, 1998, and did not participate in this decision.

## GILLETTE, J.

This is an action under ORS 659.425(1) (1995), which prohibits discrimination, based on disability, with respect to hiring, firing, and other "terms, conditions and privileges" of employment.[1] Plaintiff, who is HIV-positive, filed this action against her former employers, alleging that defendants[2] had violated ORS 659.425(1) by telling her that a customer had complained about her HIV condition and that business would suffer if she continued in their employ. The trial court entered summary judgment for defendants and the Court of Appeals affirmed. *Doe v. Denny's, Inc.*, 146 Or App 59, 931 P2d 816 (1997).

We allowed plaintiff's petition for review to consider whether an employer might violate the statute by discussing negative customer perceptions of an employee's disability with an employee. We also allowed review of a secondary issue pertaining to the trial court's denial of a motion to compel the production of a document—a denial that the Court of Appeals also affirmed. We affirm the decision of the Court of Appeals.

As noted, the primary issue presented by this case was decided on a motion for summary judgment. In reviewing a trial court's decision to grant summary judgment, we consider the evidence that was before the trial court, along with all reasonable inferences to be drawn from that evidence, in the light most favorable to the nonmoving party—

---

[1] ORS 659.425(1) (1995) provided:

"For the purpose of ORS 659.400 to 659.460, it is an unlawful employment practice for any employer to refuse to hire, employ or promote, to bar or discharge from employment or to discriminate in compensation or in terms, conditions or privileges of employment because:

"(a) An individual has a physical or mental impairment which, with reasonable accommodation by the employer, does not prevent the performance of the work involved;

"(b) An individual has a record of a physical or mental impairment; or

"(c) An individual is regarded as having a physical or mental impairment."

The 1997 legislature amended ORS 659.425 in ways that do not affect the present discussion.

[2] Defendants are Denny's, Inc., the restaurant chain that employed plaintiff, and Jacobs and Hibbard, two of her supervisors.

here, plaintiff. *Wallulis v. Dymowski*, 323 Or 337, 340, 918 P2d 755 (1996). We accept plaintiff's version of the events (to the extent that that version is set out in her deposition and other evidentiary materials) as true, as well as other evidence that supports her position.

The relevant events occurred while plaintiff was training as a server at a restaurant owned by defendant Denny's, Inc. Sometime during the training period, plaintiff told her immediate supervisor, defendant Hibbard, that she had been diagnosed as HIV-positive. Hibbard's demeanor toward plaintiff immediately changed. He became less friendly and more aloof. The next day, Hibbard called plaintiff into his office. Hibbard told plaintiff that a "regular customer" had complained about plaintiff. According to Hibbard, the customer had said not only that he knew about plaintiff's HIV condition, but also that he intended to tell others and to boycott the restaurant as long as plaintiff was employed there. Hibbard then told plaintiff that he could not fire her or lay her off, but that her continued employment would harm or destroy the restaurant's business.

Plaintiff offered to resign, but indicated that she wanted to talk to her Adult and Family Services caseworker first. That evening, the caseworker confirmed what Hibbard had said: that plaintiff could *not* be fired because of her HIV status. The caseworker also told plaintiff that, if she resigned, she would lose her eligibility for certain government benefits. After plaintiff reported that information to Hibbard, Hibbard and plaintiff agreed that plaintiff would resign and that Hibbard would treat that separation from work as a layoff, in order to assist plaintiff in obtaining unemployment benefits. Hibbard also agreed to provide (and did provide) plaintiff with a favorable letter of reference.

Sometime after her resignation, plaintiff initiated the present action against Denny's, Hibbard, and another supervisor, Jacobs. In her complaint, plaintiff asserted two claims against defendants under ORS 659.425(1): First, that defendants' conduct amounted to wrongful discharge and, second, that it was unlawful discrimination with respect to one or more "terms, conditions or privileges of employment." In their answer, defendants admitted that plaintiff had been

informed of a customer complaint, but denied plaintiff's claims of wrongful discharge and unlawful discrimination.

Defendants moved for summary judgment. They argued that, because plaintiff had resigned and had not identified any intolerable working conditions suggesting that her resignation was involuntary, her wrongful discharge claim must fail as a matter of law. With respect to plaintiff's discrimination claim, defendants noted the absence of any evidence that defendants had treated plaintiff differently in any "term, condition or privilege" of employment on learning of her condition.

In response to defendants' motion, plaintiff purported to show that she had been constructively discharged — that Hibbard told her about the complaint and his concerns about public perception of the business in a deliberate and, ultimately, successful effort to humiliate her into resigning. Plaintiff also submitted a cross-motion for summary judgment on the discrimination claim, arguing that she was entitled to judgment as a matter of law.

Ultimately, the trial court granted defendants' motion and denied plaintiff's. The court explained its decision by noting that plaintiff had resigned and that "there were no changes in [plaintiff's] working conditions after she gave the defendants notice of her HIV condition."

As noted, on plaintiff's appeal, the Court of Appeals affirmed. The Court of Appeals' majority agreed with the trial court that plaintiff had not demonstrated any change in her working conditions:

"Actionable discrimination under [ORS 659.425] requires that an employee be treated differently in the work place because of a physical condition in a manner proscribed by the statute. Hibbard's statement, made during a private conversation with plaintiff, that the customer's statements about plaintiff's condition could destroy Denny's business did not change anything concerning the terms or conditions of her employment. Even if the jury could properly infer from Hibbard's statements and demeanor that defendants hoped that plaintiff would resign, that hope was not expressed in any inducement or threat that changed a term, condition or privilege of her

employment. In sum, defendants said and did nothing that violated the statute. The terms and conditions of plaintiff's employment were the same before, during and after the conversation. Similarly, plaintiff's theory of constructive discharge also fails because there is no evidence of any intolerable 'conditions' of employment that forced her to resign."

*Id.* at 66-67. The Court of Appeals also concluded that the trial court did not err in denying plaintiff's motion to compel. *Id.* at 68.

We turn first to plaintiff's statutory wrongful discharge claim. Under ORS 659.425(1), it is an unlawful employment practice to "discharge [an individual] from employment" because of a real or perceived mental or physical impairment. Leaving aside (for the moment) the issue of defendants' motives, we consider a more elementary issue— whether in fact plaintiff was discharged. Plaintiff acknowledges that defendants did not discharge her in the usual sense of that word. At least formally, she resigned. She argues, however, that her resignation was prompted by working conditions that were imposed on her because of her HIV condition—working conditions that would have caused a reasonable person to resign. She contends, in other words, that defendants *constructively* discharged her for discriminatory reasons, in violation of ORS 659.425(1).

The elements necessary to establish a constructive discharge were set out by this court most recently in *McGanty v. Staudenraus*, 321 Or 532, 557, 901 P2d 841 (1995):

> "[T]o establish a constructive discharge, a plaintiff must allege and prove that (1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions *or* knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions."

(Footnotes omitted; emphasis in original.)

Plaintiff asserts that Denny's constructively discharged her under that standard. She contends that defendants intentionally created an intolerable working condition by telling her that a customer knew about her condition and intended to tell others, and by implying that her continued employment would harm her own economic well being and damage or destroy the business. She suggests that defendants conveyed an implied threat of public humiliation—that she would be forced to deal with inevitable negative customer reactions herself, without any support or protection from her employers.

In rejecting plaintiff's constructive discharge theory, the Court of Appeals focused on the apparent absence of any identifiable change in the "conditions" of plaintiff's employment. For the reasons that follow, we agree with that approach.

■ Plaintiff's wrongful discharge claim fails, because she cannot identify any act or statement by her employer that created or maintained an intolerable working condition that she would be forced to endure if she remained on the job. Hibbard's prediction that a customer boycott over her employment would destroy the restaurant's business cannot reasonably be stretched into a nonexistent threat to withhold protection from abusive customers. Hibbard's words do not suggest that inference, and we are not bound to agree with plaintiff's advocacy for an interpretation of Hibbard's statement that his words will not bear. The Court of Appeals correctly affirmed the trial court's dismissal of plaintiff's wrongful discharge claim.

We turn to plaintiff's second claim under ORS 659.425(1)—that defendants discriminated against plaintiff with respect to a "term, condition or privilege" of employment because of her HIV status. With respect to that claim, plaintiff offers two arguments. The first argument relies on a Bureau of Labor and Industries (BOLI) rule pertaining to employer evaluations of disabled employees' work performance, OAR 839-006-0250:

"The attitude or preference of employers, managers, supervisors, coworkers, clients or the general public toward

the person's perceived or actual impairment *may not be considered by the employer in evaluating* the person's ability to perform the work involved."

(Emphasis added.)

Plaintiff contends that defendants violated that rule by *revealing* a customer's negative perceptions of plaintiff's job performance to plaintiff when those perceptions were based solely on her disability. Plaintiff further contends that, in doing so, defendant violated ORS 659.425(1), because non-compliance with OAR 839-006-0250 is unlawful discrimination *per se*:

> "Here, the employer, by revealing such perceptions to the employee, was telling Doe that her ability to do her job was impaired because of adverse public perceptions of her disability and the problems resulting from such perceptions. Under OAR 839-006-0250, this type of conduct is discriminatory per se. An employer may not, in any way, communicate to an employee the employer's disapproval of a disabled employee's job performance, based upon adverse public perceptions of the employee. The reasoning behind this approach is undoubtedly grounded in the notion that individuals with disabilities may be especially sensitive about how they are perceived by the public due to their disability."

We need not decide whether plaintiff's interpretation of OAR 839-006-0250 is correct, because her argument under that interpretation is not supported by the facts in this record. Employer was not, by informing plaintiff about adverse customer perceptions of her disability, making its *own* evaluation of her ability to perform as a waitress. Discriminating lies in *altering* working conditions due to a protected factor (handicap, religion, sex, race, and the like), not in merely acknowledging orally the hostility of customers toward plaintiff due to her handicap. Plaintiff's argument in this respect fails.

Plaintiff's remaining argument suggests that, to raise a question of fact as to whether defendant had discriminated in a term, condition, or privilege of employment, it was sufficient for her to show that defendants' conduct made her *feel* unwanted and that that conduct was motivated by the

*hope* that she would resign. In so arguing, she decries the Court of Appeals' "narrow" view of the relevant wording:

> "The Court of Appeals majority approached this issue very narrowly. They found that because defendants 'did not fire plaintiff, change her work hours, pay her less money or deprive her of a benefit or privilege that other employees had under their employment relationship' she was not discriminated against. The majority analysis effectively shifts the issue from the employer's conduct to the nature of the harm suffered by the employee, by requiring that the employee must show some tangible loss of a job benefit in order to prove discriminatory treatment.
>
> "The problem with this analysis is that it ignores the power relationships that are present in an employer-employee setting. The *attitude* of the employer toward the employee is a very important condition of employment."

(Emphasis in original.)

We understand plaintiff to be arguing that, contrary to the Court of Appeals' conclusion, discrimination can exist in the alteration of an *intangible* condition of a job, namely, the employer's subjective attitude toward the employee, providing that the employee is able to show that the alteration is due to an impermissible motive. We need not decide that question, however, because plaintiff's claim would fail, on this record, even under the test that she advocates.

■■ At its essence, proving discrimination requires some showing of a change in a working condition to the worker's detriment. Here, the employer acknowledged that customers likely would boycott the restaurant, and that that would lead to economic hardship for the company and for plaintiff. The employer stated or implied that it disfavored that consequence—it hardly could have been otherwise. However, the employer did not state or imply that it planned to change any aspect of plaintiff's working conditions in response to the threatened boycott. The fact that plaintiff "felt" unwanted as a result of employer's comments does not create a fact question about whether the employer altered a working condition in saying what was said. Plaintiff offers no further facts to show that her job as a waitress in the restaurant required a close working relationship with the supervisor, so that his

behavior in treating her with a cold shoulder might be viewed as discriminatory behavior under the legal test that plaintiff advocates.

In this regard, plaintiff's most serious argument is that her supervisor called her into his office to speak about the topics of the customer boycott, potential economic losses for them both and, for the worker, loss of her reputation in the community and probable harassment from customers, all with the hope that plaintiff would choose to resign.

Some points about the conversation are pivotal. The supervisor announced no alterations of plaintiff's working conditions. Acknowledging the discriminatory attitudes of customers, and the harm that may flow from those attitudes, does not convey any plan of the employer's own to itself engage in discriminatory actions. The supervisor conveyed no offensive terms or rude statements about plaintiff, her infection status or the difficulties that the customers' attitudes had created. The meeting occurred one-on-one, not in front of a group. Employer announced no ultimatums or deadlines for a decision by plaintiff to quit, and made no threats to expel her if she was indecisive about staying or leaving. The meeting transpired briefly, and the supervisor used a conversational tone of voice without undue stress or profanity.

Plaintiff may have "felt" humiliated by the employer's actions, but we cannot say, on this record, that employer *inflicted* humiliation on her. In short, the employer's conduct made no *change* in plaintiff's *working conditions*. Because it did not, plaintiff's claim fails. The trial court properly awarded summary judgment to defendant.[3]

Plaintiff raises one additional issue, pertaining to the denial of a motion made during the discovery phase to compel production of a document. At the deposition of defendant Jacobs, he testified that he had prepared a report for his employer shortly after plaintiff filed her action and that he had "reviewed" the report before, and in preparation for, his

---

[3] Our conclusion that summary judgment for defendants was proper also disposes of plaintiff's claim that the trial court erred in denying her cross-motion for summary judgment.

deposition. When plaintiff requested that the report be produced, defendants refused. Plaintiff then moved to compel production, citing OEC 612, the evidence rule pertaining to writings used to refresh memory.[4] Defendants resisted the motion, arguing that the report had not been used to refresh Jacobs' memory and that it was immune from discovery as work product, ORCP 36 B(3).[5] Ultimately, the trial court denied the motion to compel, finding that the report was work product (and therefore protected from discovery under ORCP 36 B(3)) and that it was not discoverable under OEC 612, "because said document did not actually refresh the recollection of defendant Ken Jacobs." The Court of Appeals affirmed.

Plaintiff contends that the trial court erred in concluding that the work-product doctrine precluded production of the document. She argues that any work-product protection that the report might otherwise have enjoyed was waived under OEC 612 when Jacobs reviewed it before giving his deposition.

■ Whatever the merits of plaintiff's position in theory, we decline to consider them in this case, because the trial court's alternative ruling is dispositive. If, as the trial court found, the document did not, in fact, refresh Jacob's memory—and the record contains evidence that supports that finding—then failure to produce it for use in his cross examination cannot have been reversible error. The Court of Appeals therefore did not err in this respect.

---

[4] OEC 612 provides, in part:

"If a witness uses a writing to refresh memory for the purpose of testifying, either while testifying or before testifying if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness."

[5] ORCP 36 B(3) provides, in part:

"Subject to the provisions of rule 44, a party may obtain discovery of documents and tangible things otherwise discoverable under subsection B(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of such party's case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.