Argued and submitted December 5, 2000, reversed and remanded April 25, 2001

## Margie A. GODDARD,
### as Personal Representative for the Estate of
### Marc E. Goddard, Deceased,
*Appellant,*

*v.*

## FARMERS INSURANCE COMPANY
## OF OREGON,
### an Oregon corporation,
*Respondent.*

### (90-05-03204; CA A106027)

22 P3d 1224

Margaret H. Leek Leiberan argued the cause for appellant. With her on the briefs were Kathryn H. Clarke and William A. Barton.

Thomas H. Tongue argued the cause for respondent. With him on the brief were Dunn Carney Allen Higgins & Tongue, Angela M. Stewart and Abbott, Davis, Rothwell, Mullin & Earle, P.C.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Lipscomb, Judge pro tempore.

LIPSCOMB, J., pro tempore.

**LIPSCOMB, J., pro tempore.**

This is an action for damages against Farmers Insurance Company (Farmers) resulting from an excess judgment against its insured in a wrongful death case. Plaintiff is the assignee of the claims of the original tortfeasor, Munson, who was Farmers' insured. Plaintiff appeals the allowance of summary judgment in favor of Farmers by the Multnomah County Circuit Court. We reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Although at this stage of the proceeding plaintiff is entitled to the benefit of the doubt with respect to any factual issues, the facts are largely undisputed. On October 29, 1987, plaintiff's decedent, Marc E. Goddard (Goddard), was killed in a two car automobile accident that occurred in front of the Stonefront Tavern in Salem. The other driver, John Munson (Munson), in attempting to turn into that tavern, crossed the center line and drove into the path of the Goddard vehicle. At the time, Munson was intoxicated and was driving a vehicle owned by Helen Foley (Foley). Foley's insurer, Farmers, also provided liability insurance on Munson's vehicle, each policy providing $100,000 in coverage. Subsequent to Munson's conviction for criminally negligent homicide, Goddard's estate brought a wrongful death action against Munson in June 1988.

Following the accident, Farmers initially represented to plaintiff that both policies, totaling $200,000, applied to the accident. Later, Farmers indicated that it believed only Foley's policy of $100,000 applied. Ultimately, Farmers took the position that neither policy applied, and it filed a declaratory judgment action asking the court to determine the amount of coverage, if any, available to Munson. The declaratory judgment action was originally scheduled to precede the liability trial, but it was postponed for reasons that are not entirely clear from the record.

The wrongful death action went to trial in Marion County Circuit Court in mid-January 1990, without the benefit of a prior adjudication as to the amount of insurance coverage available to Munson. Eleventh-hour settlement

attempts failed,[1] and at the conclusion of the trial the jury awarded plaintiff a verdict in excess of $860,000, including $250,000 in punitive damages. That jury award was affirmed by this court on appeal. *Goddard v. Munson*, 108 Or App 342, 816 P2d 619, *rev den* 312 Or 525 (1991).

Thereafter, the declaratory judgment action was tried to the court without a jury over both parties' objections. The trial court found coverage under Foley's policy but not under Munson's. On appeal, this court reversed, holding that it was error for the trial court to refuse the parties' joint requests for a jury trial on the coverage issues. *Farmers Ins. Co. v. Munson*, 127 Or App 413, 873 P2d 370, *rev den* 320 Or 109 (1994). On remand, a jury found coverage under both policies, and Farmers appealed. This court again reversed, finding that there had been evidentiary error relating to the Foley policy, and that the trial court had erred in not granting Farmers' motion for directed verdict with respect to Munson's policy. *Farmers Ins. Co. v. Munson*, 145 Or App 512, 526, 530, 930 P2d 878 (1996), *rev den* 325 Or 368 (1997). On remand, coverage was once again found under Foley's policy. That case was not appealed, and in March 1998 Farmers paid Goddard $100,000 under the terms of Foley's automobile insurance policy.

Following entry of judgment in the wrongful death action, Munson assigned any and all claims he had against Farmers to Goddard. Goddard thereafter commenced this action in Multnomah County Circuit Court, couched in terms of negligence and bad faith, in an attempt to recover from Farmers the amount of the unsatisfied excess verdict against Munson in the original tort action.

After substantial discovery, and shortly before trial, the trial court granted Farmers' motion for summary judgment stating:

---

[1] During trial itself, Farmers offered to settle all claims against both Foley (who had been joined under a negligent entrustment theory) and Munson for $100,000 plus the opportunity to arbitrate any additional liability should the still pending declaratory judgment action conclude that both policies were available. Plaintiff counter-offered to settle for $100,000, plus an additional $100,000 pending the outcome of the declaratory judgment action in Munson's favor. Both Farmers' offer and plaintiffs' counteroffer were rejected by the other party at that late date.

"Well, I'm going to grant the Motion for Summary Judgment. I don't think there's a question of fact triable to a jury or to any trier of fact. I think that the policy limits were $100,000. As it turned out, the plaintiff guessed wrong. They were trying to be tough and hold it at $200,000. There was never an opportunity to settle within the policy limits, and none is alleged in the Fourth Amended Complaint."

Goddard appeals to this court from the resulting judgment in Farmers' favor.

## II. SUMMARY JUDGMENT

■ Summary judgment is appropriate when the "pleadings, depositions, affidavits and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ORCP 47 C. No genuine issue of material fact exists where no objectively reasonable juror could return a verdict for the adverse party. *Id.* On appeal, the reviewing court must view the evidence, and all reasonable inferences that can be drawn from that evidence, in the light most favorable to the nonmoving party. *Reesman v. Highfill*, 327 Or 597, 603, 965 P2d 1030 (1998).

■ The respective rights and duties between an insurer and its insured arise out of the insurance contract that exists between them. This contractual relationship is subject to Oregon's Insurance Code, the statutory scheme enacted to regulate the insurance industry. *See* ORS ch 731. Where, as here, a liability insurer agrees to defend its insured against third-party claims, a failure to defend adequately is actionable at law. The duty to defend includes the duty to settle the case within the policy limits if it would be reasonable to do so. *Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 519, 693 P2d 1296 (1985); *Eastham v. Oregon Auto. Ins. Co.*, 273 Or 600, 608, 540 P2d 364 (1975); *Kriz v. Gov't Employees Ins. Co.*, 42 Or App 339, 600 P2d 496 (1979), *rev den* 288 Or 571 (1980). Whenever a liability insurer undertakes to defend its insured, it may be liable to the insured for the amount of any excess verdict if the insurer did not reasonably attempt to settle the claim within the policy limits, or if it conducted the defense of its insured in a manner that was otherwise negligent. *Maine Bonding*, 298 Or at 518-19.

Thus, an insurer has an affirmative duty of care to its insured, which in an appropriate case requires the insurer to initiate settlement efforts. "Due care may require that an insurer make inquiries to determine if settlement is possible within the policy limits." *Maine Bonding*, 298 Or at 519. *See* Robert Keeton and Alan Widiss, *Insurance Law* § 7.8(c), 889-90 (1988) ("In most circumstances the insurer, having reserved to itself the right to control the defense and the decision whether to agree to a settlement, should be obligated to explore the possibility of a settlement even in the absence of actions by the third-party or an express request by the insured."). Oregon's Insurance Code also provides an affirmative responsibility to seek an equitable settlement once liability becomes reasonably clear:

"(1) No insurer or other person shall commit or perform any of the following unfair claim settlement practices:

"* * * * *

"(f) Not attempting, in good faith, to promptly and equitably settle claims in which liability has become reasonably clear." ORS 746.230.

Viewed in the light most favorable to plaintiff, Munson's liability for plaintiff's damages was at least "reasonably clear."[2] Accordingly, Farmers would have had an affirmative duty to seek to protect its insured against any excess liability by making a reasonable effort to settle within policy limits, whether or not plaintiff made a policy limits offer of its own.[3]

For purposes of the summary judgment motion, Farmers does not dispute that there was evidence that it breached its duty of care to Munson.[4] To prevail, however,

---

[2] We note that Munson had, prior to trial, been convicted of criminally negligent homicide, and that he had been drinking heavily all afternoon prior to turning in front of Goddard's vehicle. Viewing these facts in the light most favorable to plaintiff, a reasonable juror could certainly conclude that Farmers had an affirmative duty to seek a reasonable settlement well in advance of trial, up to and including its full policy limits.

[3] In an appropriate case the insurer may also be required to explain why no further coverage exists. *See* ORS 746.230(1)(m) ("[f]ailing to promptly provide the proper explanation of the basis relied on in the insurance policy in relation to the facts or applicable law for the denial of a claim" is an unfair claim settlement practice).

[4] At oral argument on appeal, Farmers' counsel stated:

plaintiff must show proof not only that Farmers breached a duty of care to its insured, Munson, by failing to negotiate and offer a policy-limits settlement to Goddard, but also that Munson's damages were caused by that breach.

Farmers contends that summary judgment was proper because plaintiff failed to adduce any evidence establishing the second element, causation. In particular, Farmers asserts that plaintiff offered no evidence that she would have accepted a policy-limits settlement if one had been offered—and, indeed, that all of the evidence was to the contrary.

Farmers cites to excerpts of deposition testimony by plaintiff's two trial attorneys, Amala and Harris, and it argues that that testimony proves beyond any question that a timely offer for $100,000, the amount ultimately determined to be the correct policy limits, would have been neither recommended by the attorneys nor accepted by plaintiff.

Farmers is correct that there are inconsistencies between the testimony of Amala and Harris on this issue. In fact, there are internal inconsistencies within the deposition testimony of each. However, based upon a reading of the complete depositions, we believe that reasonable jurors could conclude from all of the evidence that plaintiff would probably have accepted a policy limits offer if one had been made in a timely fashion.

Plaintiff's representative testified in her deposition that she would have accepted any offer her attorneys advised her to take. Early on in the case, plaintiff's attorneys offered to settle for $200,000, the amount that Farmers had then indicated to be the applicable policy limits. There was no response to that offer. Moreover, in his own deposition Amala testified at one point that "if there was only a hundred, we

---

"[Breach] isn't an issue—it wasn't in the summary judgment an issue, and it isn't an issue here. We are assuming, for purposes of this summary judgment only, that Farmers was unreasonable in not having offered money earlier. We're assuming that, for purposes of this discussion here. Then we get to causation * * *.

"* * * * *

"So the question is, did Farmers have a duty to offer [a policy limits settlement], and if it had been offered, would it have been accepted? And that last question is the question that was addressed at summary judgment."

would have taken a hundred * * * I think we would have taken the hundred thousand."

Viewed in the light most favorable to plaintiff, the evidence would support a jury's conclusion that plaintiff would probably have accepted an offer to settle for $100,000 in advance of trial. In fact, there is substantial evidence that, if Farmers had offered its policy limits and had clearly disclosed to plaintiff why it believed that only one policy was actually available for coverage despite its earlier representations that two $100,000 policies were available, plaintiff would have settled for $100,000.

We find causation to be an issue of fact for the jury in this case. Accordingly, we hold that the trial court's entry of summary judgment in Farmers' favor on this record was error, and that the judgment should be reversed and the case remanded to the circuit court for trial.[5]

## III. OTHER ISSUES LIKELY TO ARISE ON REMAND

Originally, plaintiff's amended complaint also alleged that Farmers was negligent in "failing to engage in continuing and reasonable settlement negotiations after the trial and entry of judgment against its insured, Munson[.]" In an ORCP 21 motion, Farmers moved to strike that allegation as frivolous, and the trial court granted Farmers' motion without opinion. The effect of the lower court's ruling was to decide, as a matter of law, that Farmers owed no duty to engage in reasonable settlement negotiations following

---

[5] Farmers also quarrels with the sufficiency of plaintiff's pleadings to support a verdict in its favor. Specifically, Farmers notes that plaintiff has pleaded inconsistent alternative facts with respect to causation. Plaintiff's fourth amended complaint alleges:

"Plaintiff would have accepted a reasonable and timely settlement offer within the limits of Farmers' indemnity obligation. Alternatively, if prior to the filing of the declaratory judgment action Mrs. Goddard had received and rejected an offer of $100,000, it would have been because of the way Farmers had processed the estate's claim."

However, ORCP 16 C specifically permits alternative pleadings:

"[W]hen a party is in doubt as to which of two or more statements of fact is true, the party may allege them in the alternative."

While this paragraph of plaintiff's fourth amended complaint could have been more artfully drafted, we believe that it would have been sufficient to support a jury verdict in plaintiff's favor on these facts.

return of the jury's verdict. Plaintiff argues that this was error.

■ Plaintiff stands before the court in the shoes of Farmers' insured, Munson, as a result of its assignment. Therefore, the appropriate issue is whether an insurer's failure to conduct reasonable settlement negotiations with a third party after entry of an excess verdict against its insured can constitute actionable negligence. Farmers' position is that an insurer owes no continuing duty to its insured after entry of judgment. Farmers argues that once a verdict has been returned, the fiduciary duties stemming from the assumption of the insured's defense expire, and that indemnity is thereafter the insurer's sole remaining responsibility. Farmers is incorrect.

■ It is significant to note that an insurer's duty to defend does not necessarily end with a judgment. The duty to defend includes the duty to appeal in an appropriate case. *See, e.g., Cathay Mortuary Wah Sang v. United Pacific Ins.*, 582 F Supp 650, 657 (ND Cal 1984). Here, of course, Farmers did undertake an appeal in defense of its insured, but it made no further settlement attempts pending resolution of that appeal.

■ ■ Following entry of an excess verdict against the insured, the interests of the insured and the insurer are dramatically different. The insured, now personally liable to plaintiff for the amount of an actual excess judgment, has a heightened interest in settling for an amount within the applicable policy limits. The insurer, with its potential indemnity exposure confined by the limits of the insurance contract, has little to lose by resisting settlement for the policy limits while continuing to defend the case on appeal. If it wins the appeal, the excess verdict will be set aside and a new trial ordered. If it loses the appeal, the policy limits control its financial exposure.

No Oregon appellate opinion has directly addressed this issue, but cases from other courts are instructive. The Ninth Circuit, in a case decided under Oregon law, followed the majority view that a liability insurer owes an "even greater duty" to its insured following entry of judgment. *State Farm Mutual Automobile Insurance Co. v. Brewer*, 406 F2d

610, 613 (9th Cir 1968) (quoting *Foundation Reserve Ins. Co. v. Kelly*, 388 F2d 528, 531 (10th Cir 1968)). The *Brewer* court first cited the Oregon Supreme Court's decision in *Radcliffe v. Franklin Nat'l Ins. Co.*, 208 Or 1, 298 P2d 1002 (1956), for the proposition that an insurer must give equal consideration to the interests of its insured, and then it concluded that a failure to attempt settlement after an adverse verdict was actionable in Oregon. *Brewer*, 406 F2d at 612.

Oregon's Insurance Code also requires an insurer to affirmatively attempt to settle claims when liability becomes reasonably clear. ORS 746.230(1)(f). We believe that entry of an adverse excess judgment is normally a reasonable indication of liability, and that a complete failure to attempt settlement after entry of judgment may well constitute actionable negligence. *See R.W. Beck & Assoc. v. City and Borough of Sitka*, 27 F3d 1475, 1486 (9th Cir 1994); *Samson v. Transamerica Ins. Co.*, 30 Cal 3d 220, 636 P2d 32, 46 (1981); *Chenoweth v. Financial Indemnity Co.*, 13 Ariz App 313, 315, 476 P2d 519, 520-21 (1970).

Following entry of a judgment in excess of its policy limits an insurer must continue to give equal consideration to the interests of its insured. The insurer must act as if it alone were liable for the amount of the entire judgment, and the reasonableness of the insurer's actions after judgment should be viewed in this context. Accordingly, Farmers' ORCP 21 motion against the post-judgment allegation in plaintiff's complaint should not have been granted.

Plaintiff also challenges in this appeal the trial court's ruling denying discovery of various post-judgment documents. Some disagreement exists between the parties as to the basis for the trial court's ruling, and none is expressly given by the court's order.

Plaintiff argues that the trial court denied discovery of these documents on the basis of its previous determination that an insurer owes no continuing duty to seek reasonable settlement opportunities following judgment. If so, that would be error. Farmers' position, however, is that the trial court denied discovery of these post-judgment documents based on Farmers' claim of both the attorney-client and work-product privileges.

The record reflects that the trial court made its ruling based on Farmers' asserted privileges. Farmers' response to plaintiff's motion to compel thoroughly addressed the issue of privilege, and the record shows that the trial court conducted an *in camera* review of the disputed documents prior to making its ruling. There would be no reason for an *in camera* review unless the court was reviewing the documents to determine whether they were privileged. Plaintiff offers no credible argument that the trial court abused its discretion in denying discovery of the disputed documents on the basis of the privileges asserted, and we find no such abuse. *See Doe v. Denny's, Inc.*, 146 Or App 59, 67, 931 P2d 816 (1997), *aff'd* 327 Or 354, 963 P2d 650 (1998).

Reversed and remanded.