Argued and submitted April 16, 1993, reversed in part; otherwise affirmed
February 23, 1994

## Charles MEKKAM,
*Respondent,*

*v.*

## OREGON HEALTH SCIENCES UNIVERSITY
and Douglas McDonald,
*Appellants.*

(9103-01566; CA A75085)

869 P2d 363

Jas. Adams, Assistant Attorney General, argued the cause for appellants. With him on the briefs were Charles S. Crookham and Theodore R. Kulongoski, Attorneys General, and Virginia L. Linder, Solicitor General.

Richard C. Busse argued the cause for respondent. With him on the brief was Scott N. Hunt.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

## De MUNIZ, J.

Plaintiff sued defendant Oregon Health Sciences University (OHSU) under 42 USC § 1981 and for common law wrongful discharge. He alleged that he had suffered pay disparity and was not promoted because of his race. He also alleged that OHSU laid him off because he had filed a racial discrimination complaint with OHSU's affirmative action office. Plaintiff also sued his supervisor, defendant McDonald, alleging that McDonald intentionally interfered with an employment contract between OHSU and plaintiff for the improper purpose of racial discrimination. The trial court denied defendants' motions for directed verdicts on plaintiff's claims. The jury found for plaintiff on each of his claims. It awarded plaintiff general and punitive damages against OHSU on the section 1981 and wrongful discharge claims. In addition, it awarded him general and punitive damages against McDonald on the intentional interference with contract claim.[1]

■ Defendants assert on appeal that the trial court erred in denying their directed verdict motions. We view the evidence in the light most favorable to plaintiff and will reverse only if there is no evidence from which the jury could have found for him. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). Plaintiff was born in Nigeria. He began working for OHSU in 1986, as an accountant clerk in the Telecommunications Department. His job was to review OHSU's telephone bills for accuracy, pay them and recoup the payments from the various OHSU departments. He also worked with the individual departments on billing problems, including overpricing, overbilling and fraud. McDonald was

---

[1] In his original and amended complaints, plaintiff included McDonald as a defendant on each of the claims. However, when defendants moved for a directed verdict, plaintiff's counsel removed McDonald as a defendant on the section 1981 claim. The jury returned verdicts on that claim and the wrongful discharge claim against only OHSU.

The trial court adjusted the jury's verdict according to the limitations on general damages and the prohibition on punitive damages for common law tort claims pursuant to ORS 30.270. The final judgment awarded plaintiff $250,000 in general damages and $500,000 in punitive damages, plus reasonable attorneys' fees, costs and disbursements on the section 1981 and wrongful discharge claims against OHSU. It also awarded him $10,000 in general damages plus costs and disbursements against McDonald on the intentional interference with contract claim. Plaintiff does not cross-appeal from the damage limitations imposed in the judgment.

the Assistant Director of the Telecommunications Department and plaintiff's supervisor.

In 1990, OHSU instituted a new computerized on-line telephone billing system, and the bill processing center moved from the OHSU campus in Portland to Corvallis. Plaintiff helped implement the new system, and his duties changed. Some of his duties were eliminated or could be performed by anyone with access to the billing system computer network. He began attending management meetings and making recommendations about problems and projections. He also functioned as a liaison between OHSU and some of the OHSU departments that were not located on the main campus in Portland.

Plaintiff sought a job reclassification, because he was performing duties that fell within a higher classification level. He participated unsuccessfully in a union procedure to gain the reclassification. Plaintiff was told by management that he was not reclassified because there was no existing higher classification job description that matched his new duties, and his supervisor refused to create a new job description. However, he learned that another individual in the Telecommunications Department had been reclassified without a position description.

In September, 1990, plaintiff filed a complaint with OHSU's affirmative action office, because he believed that racial discrimination had caused OHSU to treat his reclassification request differently from reclassification requests presented by other employees. An OHSU affirmative action officer testified that plaintiff's complaint had presented a *prima facie* case and that the officer had proposed a settlement whereby plaintiff would be classified at the same level as the other employee who had been reclassified without a job description. However, on December 1, 1990, the day before McDonald was to respond to the affirmative action settlement proposal, plaintiff received a layoff notice.

The notice advised plaintiff that it was necessary to reduce staff because of automation of the billing system and that he would be laid off, effective January 4, 1991. The notice also advised plaintiff that he had various options that would

allow him to displace an employee in his or a lower classification. In addition, it said that if he elected

> "to be laid off, [his] name [would] be placed on the full time Layoff List for two years for recall in service credit order to any full time position as an Accounting Tech. for which [he qualified]."

OHSU subsequently extended the effective date of the layoff to February 8, 1991.

According to testimony presented at trial, there was a clique in the Telecommunications Department and minority employees of the department were often left out of the clique. There was also testimony that a pattern of favoritism towards members of the clique existed. Koch, a former manager of the department who had been fired, testified that plaintiff was not "well thought of" by upper management. Koch had the impression that race was a factor in the upper managers' opinions of plaintiff. He said that upper management discussed getting rid of plaintiff by eliminating his position and later recreating it, because management believed that it would be "very difficult to get rid of [plaintiff] because of his race."

After plaintiff received the layoff notice, but before the layoff became effective, OHSU's personnel office assisted plaintiff with finding another job at OHSU. The personnel office notified plaintiff of a vacancy in another department, and he obtained a "try-out" for that job. He completed a 90-day trial period and became a permanent employee in that job on February 11, 1991. A personnel action form submitted at that time said, "Employee transferring from Telecommunications with layoff status and a 3-mo trial service." Plaintiff's payroll number was changed. He retained the sick and vacation leave that he had accumulated while working in the Telecommunications Department, but lost his seniority.

In its first assignment, OHSU contends that the trial court erred in denying the motion for a directed verdict on plaintiff's section 1981 claim. OHSU asserts that plaintiff was not entitled to relief under the 1988 version of section 1981, because he was not denied a right to make or enforce a contract. *See* n 2, *infra*. It also argues that, although plaintiff might have stated a claim for relief under the Civil Rights Act

of 1991, that Act was not effective and does not apply retroactively.[2] It essentially argues that the trial court erred because the conduct occurred after plaintiff had entered into an employment contract with OHSU and before the Civil Rights Act of 1991 became effective. OHSU also argues that, because it is a state entity, it could not be sued as a "person" under section 1981 and punitive damages cannot be awarded against it.

Plaintiff responds that he could have prevailed on his failure to promote theory under 42 USC § 1981 (1988), and that we therefore do not need to determine whether the Civil Rights Act of 1991 applies retroactively. However, for the following reasons, we conclude that plaintiff's failure to promote theory was not actionable under the 1988 version of section 1981.

Only racial discrimination that denies an individual the right to form a contract or enforce established contract obligations is actionable under 42 USC § 1981 (1988). *Patterson v. McLean Credit Union*, 491 US 164, 171, 109 S Ct 2363, 105 L Ed 2d 132 (1989). Although a promotion ordinarily occurs after parties have formed an employment contract, a failure to promote claim is actionable under the 1988 version of section 1981 if the "nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." 491 US at 185. The addition of supervisory duties, a change in the manner in which an employment contract can be terminated, or a change from hourly to salaried compensation are characteristics of a promotion that is an opportunity to form a new contractual

---

[2] 42 USC § 1981 (1988) provided:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory *to make and enforce contracts*, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." (Emphasis supplied.)

Section 101 of the Civil Rights Act of 1991, Pub L No 102-166, § 101, 105 Stat 1071, 1072 (1991), broadened the scope of section 1981 by adding the following language:

"(b) For purposes of this section, the term 'make and enforce contracts' includes the *making, performance, modification, and termination of contracts*, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." (Emphasis supplied.)

relationship. *Sitgraves v. Allied-Signal, Inc.*, 953 F2d 570, 573 (9th Cir 1992).

■ Plaintiff asserts that he presented sufficient evidence to go to the jury on his failure to promote claim, because the evidence showed that he had assumed new duties, his job functions increased, he was working above his classification without being paid for it and "the work included providing high-level advice and administrative support to the organization." He further asserts that the evidence showed that he should have been appointed Tele-Database Administrator or an administrative specialist. However, the reclassification that plaintiff sought was not the equivalent of an opportunity to form a new employment contract with OHSU. Additional pay and duties are typical of an ordinary promotion. Moreover, there is no evidence that, by attending management meetings, he assumed supervisory duties. In sum, plaintiff's failure to promote theory was not supported by evidence that would allow him to recover under 42 USC § 1981 (1988).

■ We return to OHSU's argument that the discriminatory conduct established by plaintiff was not actionable under section 1981, because the Civil Rights Act of 1991 does not apply retroactively. The federal circuits are split on whether the Civil Rights Act of 1991 applies retroactively. *Compare Estate of Reynolds v. Martin*, 985 F2d 470 (9th Cir 1993)(Civil Rights Act of 1991 applies to cases pending at the time of its enactment) *with Harvis v. Roadway Exp. Inc.*, 973 F2d 490 (6th Cir 1992), *cert granted in part* ___ US ___, 113 S Ct 1250, 122 L Ed 2d 649 (1993)(Civil Rights Act of 1991 does not apply retroactively). In determining whether Congress intended the Civil Rights Act of 1991 to apply retroactively, OHSU urges us to follow the presumption that a statute applies prospectively unless the plain language of the statute requires retroactive application.

■ We need not resort to that presumption, because we agree with the Ninth Circuit that the language of the Civil Rights Act of 1991 indicates that Congress intended it to apply retroactively. Section 402(a) of that Act, entitled "Effective Date," reads:

"IN GENERAL. — Except as otherwise specifically pro-
vided, this Act and the amendments made by this Act shall
take effect upon enactment."[3]

Other sections of the Act indicate that the amendments made
by those particular sections do not apply to conduct that
occurred prior to enactment. For example, section 109(c)
reads:

"APPLICATION OF AMENDMENTS. — The amend-
ments made by *this section* shall not apply with respect to
conduct occurring before the date of the enactment of this
Act." (Emphasis supplied.) Civil Rights Act of 1991, Pub L
No 102-166, § 109(c), 105 Stat 1071, 1078 (1991).

That language indicates that the amendments made by sec-
tion 109 do not apply retroactively. As the Ninth Circuit
reasoned in *Estate of Martin, supra,* a holding that the Act
applies prospectively would make sections such as section
109(c) redundant and would violate the rule of statutory
construction that prohibits construing a provision to be
entirely redundant. We conclude that the language of the
Civil Rights Act of 1991 indicates that Congress intended the
amendments made by the Act to apply retroactively, except
where it specifically prohibited retroactive application.
Because there is no specific prohibition regarding section 101
of the Act, which is at issue here, it applied retroactively.

■     Next, OHSU asserts that it is not a "person," under
42 USC § 1981, and therefore was not a proper defendant on
plaintiff's section 1981 claim. Plaintiff argues that this issue
was not preserved, because OHSU did not make that argu-
ment in its motion for a directed verdict. OHSU acknowledges
that it failed to raise this issue below, but argues that we
should exercise our discretion and review it as an error of law
apparent on the face of the record pursuant to ORAP 5.45(2).

■     In *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 823
P2d 956 (1991), the court set out the procedure and analysis
we must follow before reaching an unpreserved claim of error.
The error must be one "of law"; it must be obvious and not
reasonably disputed; and we must be able to identify the error

---

[3] The date of enactment was November 21, 1991. Civil Rights Act of 1991, Pub
L No 102-166, 105 Stat 1071 (1991).

from the record without choosing between competing inferences and the facts constituting the error must be irrefutable. 312 Or at 381-82. In addition, even if we conclude that the claimed error meets those requirements, we can review it only by an exercise of our discretion, supported by a written explanation of our reasons for doing so. 312 Or at 382. Assuming without deciding that the claimed error of law is apparent on the face of the record, OHSU has provided no compelling argument why we should exercise our discretion to review it. In the absence of a compelling argument, we decline to do so.

■ Finally, OHSU argues that plaintiff could not recover punitive damages under his section 1981 claim. OHSU did not raise that argument in its motion for a directed verdict. Instead, it argued only that there was insufficient evidence to support an award of punitive damages. Again, the claim of error was not preserved, and we decline to review it. *See Ailes v. Portland Meadows, Inc., supra.*

Because we conclude that the Civil Rights Act of 1991 generally applies retroactively and that OHSU did not properly preserve its other arguments regarding plaintiff's section 1981 claim, the trial court did not err in denying OHSU's motion for a directed verdict on that claim.

■ In its second assignment, OHSU asserts that the trial court erred in denying its motion for a directed verdict on the wrongful discharge claim, because plaintiff was never separated from employment at OHSU. It argues that "an unexecuted lay-off notice and subsequent transfer between OHSU departments is, as a matter of law, not the legal equivalent of an employment discharge."

"In every action for wrongful discharge, it must be shown that the plaintiff was *discharged." Bratcher v. Sky Chefs, Inc.,* 308 Or 501, 505, 783 P2d 4 (1989). (Emphasis in original.) "[U]nderlying a discharge, direct or constructive, is a *dismissal* stemming from the employer's intent to be rid of a specific employee or employees." 308 Or at 506. (Emphasis supplied.) Plaintiff was not dismissed, because his employment relationship with OHSU never ended. The layoff notice sent to plaintiff advised him that, in lieu of a layoff, he could exercise his right to displace another less senior employee and

thereby continue to work at OHSU. That the layoff provided plaintiff with an option to continue working at OHSU indicates that OHSU did not intend to terminate his employment. Plaintiff emphasizes that he lost his "seniority rights." However, his loss of seniority resulted from his decision not to displace another worker and instead to seek the vacant position. Because plaintiff failed to prove that he was discharged, the trial court erred in denying OHSU's motion for a directed verdict on the wrongful discharge claim.

■    In a third assignment of error, McDonald asserts that the trial court erred in denying his motion for a directed verdict on plaintiff's intentional interference with contract claim. McDonald argues that he was acting for the benefit of OHSU and that an employee who acts within the scope of the employee's authority, at least in part for the benefit of the employer, is insulated from liability for causing an employer to breach an employment agreement.

■    In "mixed motives" cases, a *finding* that the defendant acted with a proper motive is a complete defense to an intentional interference with contract claim. *Welch v. Bancorp Management Services*, 296 Or 208, 675 P2d 172 (1983), *mod* 296 Or 713, 679 P2d 866 (1984). However, evidence that there was a proper motive does not compel the jury to make that finding, at least if there is also evidence of an improper motive. In *Harm v. Central Life Assurance Co.*, 107 Or App 708, 714, 813 P2d 1103 (1991), we said that a plaintiff need only provide evidence that, at least in part, a defendant was motivated by an improper objective. Once there is evidence of both proper and improper motives, the trier of fact must decide whether the motives were all proper, all improper or a mixture of both. 107 Or App at 714. Here, plaintiff presented evidence that racial discrimination and retaliation for the affirmative action complaint motivated McDonald to lay off plaintiff. McDonald presented evidence that he was following prescribed procedures under the direction of higher management and for the benefit of OHSU. Evidence of both improper and proper motives created a question for the trier of fact to decide. Accordingly, the trial court did not err in denying McDonald's motion for a directed verdict on the intentional interference with contract claim.

Judgment against Oregon Health Sciences University on wrongful discharge claim reversed; otherwise affirmed.