Submitted October 2, reversed and remanded November 27, 2013

Veronica HERNANDEZ-NOLT,
*Plaintiff-Appellant,*

*v.*

WASHINGTON COUNTY,
*Defendant-Respondent.*

Washington County Circuit Court
C108326CV; A151555

315 P3d 428

Manuel C. Hernandez and Hernandez and Associates, LLC, filed the briefs for appellant.

William G. Blair filed the brief for respondent.

Before Ortega, Presiding Judge, and Hadlock, Judge, and Edmonds, Senior Judge.

HADLOCK, J.

## HADLOCK, J.

Plaintiff appeals a general judgment in this wrongful discharge case, assigning error to the trial court's grant of summary judgment in favor of defendant Washington County. The trial court entered judgment for the county based on its determination that plaintiff's claim was untimely because it had accrued in April 2003, more than two years before plaintiff filed her claim. We conclude that the summary judgment record includes evidence from which a factfinder could determine that plaintiff's claim did not accrue until after the pertinent date in April 2003; as a result, the county did not establish that it was entitled to summary judgment on the ground that the claim was untimely. Accordingly, we reverse and remand.

Because the parties' arguments focus on when plaintiff's wrongful discharge claim accrued, we describe the elements of such a claim at the outset. An allegedly wrongful discharge can be either actual or "constructive." *Sheets v. Knight*, 308 Or 220, 226-28, 779 P2d 1000 (1989). A plaintiff can prove that a constructive discharge occurred by showing that

> "(1) the employer intentionally created or intentionally maintained specified working condition(s); (2) those working conditions were so intolerable that a reasonable person in the employee's position would have resigned because of them; (3) the employer desired to cause the employee to leave employment as a result of those working conditions or knew that the employee was certain, or substantially certain, to leave employment as a result of those working conditions; and (4) the employee did leave the employment as a result of those working conditions."

*McGanty v. Staudenraus*, 321 Or 532, 557, 901 P2d 841 (1995) (footnotes and emphasis omitted). The fourth element itself consists of two separate requirements—that "the employee did leave the employment" and that he or she did so "as a result of those working conditions." Thus, the determination of *when* an employee was constructively discharged depends on a finding about when that employee left the employment. A wrongful discharge claim does not accrue, and the statute of limitations does not begin to run, until the discharge

happens. *Stupek v. Wyle Laboratories Corp.*, 327 Or 433, 438, 963 P2d 678 (1998) ("[T]here is no claim until the discharge occurs.").

The facts pertinent to our analysis relate to that last point: the date on which any constructive discharge occurred, *i.e.*, when plaintiff left her employment with the county. In analyzing whether the county was entitled to summary judgment, we view those facts in the light most favorable to plaintiff, the nonmoving party, drawing all reasonable inferences in her favor. *Jones v. General Motors Corp.*, 325 Or 404, 408, 420, 939 P2d 608 (1997). The following description of the facts is presented in that light.

Plaintiff worked for the county for over 10 years, in various departments. In 2002, while working in the county's Department of Housing Services (DHS), she began to suspect that her supervisors were retaliating against her because she had communicated with a federal compliance officer about her role at DHS. Plaintiff expressed her concerns to her supervisors and the DHS director but did not notice an improvement in her working conditions. She felt that, "[b]ecause of the stress of the hostile work environment at DHS, [she] was forced to look for other employment." Consequently, plaintiff applied for a position in the county's Department of Disability, Aging and Veterans' Services (DAVS). She got the job and started working at DAVS in April 2003.

According to plaintiff's supervisor at DAVS, because plaintiff was "in the career service of Washington County, but hired into a new position within the County's service," a county personnel rule provided that plaintiff was subject to a one-year probationary period and would automatically be reinstated to her former position if her probationary position at DAVS was terminated. That rule was triggered in August 2003, when plaintiff's probationary position at DAVS was terminated, and she was reinstated to her former position at DHS. Instead of returning to work at DHS, however, plaintiff sought and was granted leave under the federal Family and Medical Leave Act (FMLA). The day before plaintiff's leave ended, her attorney contacted the county to determine whether she could obtain additional leave without pay or a

position in a different department so she would not have to return to DHS. The county responded by asking for plaintiff's justification for additional leave and stating that plaintiff would have to apply for another position if she wanted to be considered for one; the county also stated that plaintiff's supervisors at DHS were willing to work with her if she returned.

Although plaintiff's FMLA leave ended in late December 2003, she did not return to work. In January 2004, the county sent plaintiff a letter stating that, unless an unavoidable situation prevented her from obtaining authorization for her absence, she would be considered to have voluntarily resigned her position as of December 29, 2003. Plaintiff did not return to work.

Plaintiff sued the county on December 27, 2005, raising various claims associated with the termination of her employment. The trial court granted summary judgment to the county on each of plaintiff's claims except a common-law wrongful discharge claim, which was set for trial. The court subsequently dismissed the claim for want of prosecution, pursuant to ORCP 54 B. Plaintiff filed an appeal, then dismissed it and refiled her wrongful discharge claim in December 2010.

The county moved for summary judgment against the wrongful discharge claim. The county acknowledged that, under ORS 12.220, the timeliness of the claim should be analyzed based on the date on which it *initially* was filed— December 27, 2005, not the date on which plaintiff later refiled it in 2010.[1] That original filing was untimely, according to the county, because it occurred after the end of the two-year limitations period established by ORS 30.275(9).[2]

---

[1] ORS 12.220 provides, in relevant part:

"[I]f an action is filed with a court within the time allowed by statute, and the action is involuntarily dismissed without prejudice on any ground not adjudicating the merits of the action * * * and the statute of limitations for the action expired, the plaintiff may commence a new action based on the same claim or claims against a defendant in the original action if the defendant had actual notice of the filing of the original action not later than 60 days after the action was filed."

[2] ORS 30.275(9) provides:

"Except as provided in [statutes not applicable here], but notwithstanding any other provision of ORS chapter 12 or other statute providing a

The county reasoned that, if plaintiff had been wrongfully discharged, that discharge had happened on April 11, 2003, the date on which plaintiff left DHS to go work at DAVS—which was more than two years before she filed her claim.

The county did not base that argument on a contention that DHS and DAVS were different employers; to the contrary, it has at least implicitly acknowledged throughout this litigation that the county was plaintiff's employer both while she worked at DHS and while she worked at DAVS. Instead, the county argued that plaintiff had terminated her employment with the county by resigning her DHS position before she *again* became a county employee when she started working at DAVS. According to the county, therefore, any wrongful discharge occurred—and plaintiff's claim accrued—when plaintiff's first period of employment by the county (with DHS) ended in April 2003.[3]

Plaintiff responded that no discharge occurred in April 2003 because her employment with the county did not end at that time; rather, plaintiff argued, she merely had transferred from one county job to another. In plaintiff's view, no discharge occurred until January 2004, when she received notice that her employment with the county was being terminated, or—at the very earliest—in late December 2003, the third day after her FMLA leave ended, pursuant to a county rule applicable in such situations. Accordingly, plaintiff argued, her claim was timely.

The trial court granted the county's summary judgment motion, reasoning that, even viewed in the light most favorable to plaintiff, the record established that plaintiff's wrongful discharge claim had accrued in April 2003.

On appeal, plaintiff reiterates her contention that her wrongful discharge claim did not accrue when she moved from DHS to DAVS in April 2003. In plaintiff's view, that

_____

limitation on the commencement of an action, an action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be commenced within two years after the alleged loss or injury."

[3] The county also argued below that plaintiff's claim would have been untimely even if her discharge had not occurred until later in 2003. The county does not renew that argument on appeal.

move did not involve a resignation of her employment with the county, but rather was "a 'transfer' to a new position within the county." In response, the county also renews the argument that it made below, challenging plaintiff's characterization of her move from DHS to DAVS as a "transfer." The county contends that plaintiff's wrongful discharge claim accrued on April 11, 2003, when she *resigned* her position, [and] sought and obtained new, different and better-paid employment in an entirely different job classification with another agency." (Emphasis added.) We understand the county to argue, in essence, that every reasonable factfinder would be compelled to find that plaintiff's move from DHS to DAVS involved a resignation from employment, not merely a transfer from one county agency to another.

Thus framed, the parties' arguments raise a single question for our consideration: does the summary judgment record in this case include evidence from which a rational factfinder could determine that plaintiff did not leave her employment with the county on April 11, 2003? That question is dispositive because the trigger for the applicable two-year limitations period is the occurrence of "the alleged loss or injury." ORS 30.275(9). For a constructive wrongful discharge claim like plaintiff's, that loss or injury is the discharge. *Moustachetti v. State of Oregon*, 319 Or 319, 325, 877 P2d 66 (1994); *see Stupek*, 327 Or at 438 ("[T]here is no claim until the discharge occurs."). Accordingly, we consider whether the record creates a genuine dispute about whether any constructive discharge occurred in April 2003, *i.e.*, whether that is when plaintiff left her employment with the county. *See McGanty*, 321 Or at 557 (to establish a "discharge" for purposes of a constructive discharge claim, the plaintiff must establish that he or she "did leave the employment as a result of" intolerable working conditions).

For purposes of a wrongful discharge claim, a discharge does not occur—that is, the employee does not "leave the employment"—until "the employment relationship between the employee and the employer ends." *Stupek*, 327 Or at 439. Accordingly, a discharge does not necessarily occur when an employee transfers from one of the employing entity's departments to a position in another department within the same employer. *Mekkam v. Oregon Health Sciences Univ.*, 126

Or App 484, 493, 869 P2d 363, *vac'd*, 319 Or 623, 879 P2d 180 (1994), *on remand*, 132 Or App 470, 473, 888 P2d 1093 (reaffirming prior decision on that point), *rev den*, 321 Or 137, *cert den*, 516 US 916 (1995). Rather, as we emphasized in our original decision in *Mekkam*, the pertinent question is whether that move caused the employee's "employment relationship" with the employer to "end[]." 126 Or App at 492-93.

In this case, the record includes evidence from which a rational factfinder could determine that plaintiff's employment with the county did not end in April 2003. Plaintiff could have chosen to remain working at DHS, but instead voluntarily sought and obtained a position in another department. At least some of the paperwork associated with her change of positions characterized the move as a transfer: in completing an April 11, 2003, personnel action form, a DHS supervisor checked a box for "Transfer Out," not other available boxes labeled "Resignation" or "Dismissal." A note on the comment section of that form states, "Transfer out effective 4/11/03 [at] 5:00 p.m." In addition, as the county acknowledges on appeal, plaintiff retained the right, when she started working at DAVS, to return to her previous position at DHS if her probationary position at DAVS was terminated. A factfinder could infer from that evidence that plaintiff's employment relationship with the county was not interrupted on April 11, 2003, when she left DHS and then went to work at DAVS. Put differently, a factfinder could conclude that plaintiff was continually employed with the county from long before April 11, 2003, until several months after that date, when she declined to return to work following the exhaustion of her FMLA leave. Accordingly, the record creates a genuine dispute regarding whether plaintiff was discharged in April 2003 or not until months later and, therefore, a genuine dispute regarding whether plaintiff's wrongful discharge claim was timely filed. The trial court erred in granting summary judgment to the county on the ground that plaintiff's claim was untimely.

In arguing that the trial court's judgment should, nonetheless, be affirmed, the county also argues that the record includes no evidence that intolerable working conditions persisted in December 2003, "when plaintiff chose not

to return to work." But any dispute on that point—whether the allegedly intolerable working conditions still existed when plaintiff's employment with the county ended—is not material to the sole question before us, *viz.*, whether plaintiff's wrongful discharge claim was timely filed. That is, the date on which plaintiff stopped experiencing any such conditions is not relevant to determining when plaintiff ended her employment with the county and when, therefore, a discharge occurred—a necessary occurrence to the accrual of a wrongful discharge claim. *Stupek*, 327 Or at 438. Rather, the date on which plaintiff stopped experiencing an intolerable working environment could be relevant only to determining whether plaintiff had established one element of her wrongful discharge claim, *i.e.*, that she left her employment *as a result of* that environment. But the county did not move for summary judgment on the ground that plaintiff could not establish that element of her claim. Moreover, the record might have developed differently had the county moved for summary judgment on the merits. Accordingly, the county's alternative argument does not provide a basis for affirming the award of summary judgment in its favor. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 660, 20 P3d 180 (2001).

Reversed and remanded.